<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BAMBUSER AB, <br><br> Plaintiff, <br><br> v. <br><br> SITO MOBILE R&D IP, LLC, and SITO MOBILE, LTD., <br><br> Defendants. | Civil Action No. 23-21757 <br><br> **OPINION** <br><br> September 3, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on SITO Mobile R&D IP, LLC and SITO Mobile, Ltd.'s ("Sito" or "Defendants") Motion to Dismiss Plaintiff Bambuser AB's ("Bambuser" or "Plaintiff") Complaint (ECF 1, "Compl.") pursuant to Rule 12(b)(1). (ECF 18, "MTD.")[1] The Court reviewed all submissions in support and in opposition and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

As alleged in the Complaint, Bambuser is a manufacturer of a "video commerce software." (ECF 1, Compl. ¶ 3.) Sito "claim[s] to own or control licensing rights to at least six (6) United States patents (the 'Patents in Suit') that Sito claims deal broadly with adaptive bitrate streaming technologies." (*Id.* ¶ 6.) According to Bambuser, Sito specifically "claims to own and/or control"

---

[1] The Court also considers Plaintiff's sur-reply. (ECF 25.)
[2] The allegations in the Complaint must be accepted as true solely for purposes of this Motion, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

U.S. Patent Nos. 7,191,244; 8,015,307; 8,554,940; 9,349,138; 10,735,781; and 10,769,675. (*Id.* ¶ 7.)

On June 16, 2023, Sito commenced a patent infringement action regarding the Patents in Suit against SFA Holdings, Inc. ("SFA"). (*Id.* ¶ 8.) That action captioned *SITO Mobile R&D IP, LLC v. SFA Holdings, Inc. f/k/a Saks Incorporated*, Civil Action No. 23-688, is pending in the United States Court for the Western District of Texas (the "SFA Action"). (*Id.*) There, Sito alleges that SFA "uses [an] HTTP Live Streaming (HLS) protocol to stream video content. HLS is an HTTP-based adaptive bitrate streaming technique that enables high-quality streaming of media content over the Internet from web servers." (SFA Action, ECF 1 ¶ 19.) According to Sito, SFA has infringed upon the Patents in Suit by "own[ing], control[ling], operat[ing], and us[ing] a system for streaming media . . . that practices and infringes the media streaming method" covered by the patents and inducing customers to use the same. (*See, e.g., id.* ¶¶ 52-53, 59-64.)

SFA is one of Bambuser's customers. (ECF 1, Compl. ¶ 9.) According to Bambuser, Sito sued SFA based on its use of Bambuser's supplied technology. (*Id.*) Bambuser is not a party in the SFA Action. However, SFA has requested Bambuser defend and indemnify SFA, pursuant to the terms of an agreement governing the relationship between SFA and Bambuser. (*Id.*; ECF 16 at 3.) Bambuser agreed to defend and indemnify SFA for "any infringement by Bambuser's video-streaming product." (ECF 16 at 3; *see also* ECF 10-1 at 1 (citing ECF 1, Compl. ¶ 9).)

On November 1, 2023, Bambuser filed suit against Sito in this Court, requesting a declaratory judgment that Bambuser has not infringed the six Patents in Suit and/or that the six Patents in Suit are invalid. (ECF 1, Compl. at ¶ 1.) On December 13, 2023, SFA filed a motion to stay the SFA Action pending resolution of this action. (ECF 16 at 4-5; SFA Action, ECF 10). On April 19, 2024, the Court in the SFA Action granted SFA's motion to stay. (*See* ECF 26, Bambuser

4/22/24 Letter; *see also* ECF 26-1, Order.) The SFA Action remains stayed pending full and final resolution of the instant action. (ECF 26-1.)

On January 16, 2024, Sito filed its Motion to Dismiss Bambuser's Complaint for lack of subject matter jurisdiction. (ECF 18, MTD). Bambuser filed an opposition. (ECF 23, "Opp.") Sito filed a reply brief. (ECF 24, "Reply.") Bambuser filed a sur-reply. (ECF 25.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction because a party lacks standing. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Two types of challenges can be made under Rule 12(b)(1): a facial attack or a factual attack. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotation marks and citations omitted). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

"In reviewing facial challenges to standing, [courts] apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon*, 846 F.3d at 633. Courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Penn.*, 757 F.3d at 358 (citations omitted). When considering a factual challenge, by contrast, "a court may weigh and consider evidence outside the pleadings." *Id.* (quotation marks and citations omitted).

3

### III. ANALYSIS

Defendants move to dismiss under Rule 12(b)(1), arguing that this Court lacks subject matter jurisdiction over this suit because Plaintiff lacks Article III standing to bring this suit for declaratory relief in the District of New Jersey. (*See* ECF 18, MTD.) Plaintiff asserts that manufacturers like Bambuser have standing to bring their own declaratory judgment actions so long as the disputed infringing conduct is attributable to the manufacturer and not the customer. (*See* ECF 23, Opp.)

The Declaratory Judgment Act ("DJA") provides that,

> in the case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The Supreme Court has explained that the "actual controversy" requirement of the Act refers to the types of "cases" and "controversies" justiciable under Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).

In the patent context, the Court of Appeals for the Federal Circuit has articulated the considerations for assessing whether a plaintiff seeking a declaratory judgment has met the case-or-controversy requirement of Article III. *See Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F. 4th 1334 (Fed. Cir. 2022). This Court applies the law of the Court of Appeals for the Federal Circuit to this issue because an assessment of liability for patent infringement implicates substantive patent law. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000).

Under *Mitek*, to determine whether a plaintiff might reasonably be liable for infringement, a district court should look to the elements of the potential cause of action, then consider both the patent claims at issue and the alleged facts concerning the plaintiff in light of those elements. 34

4

F. 4th at 1343. Although the plaintiff is not obligated to prove, for jurisdictional purposes, that it infringes the patents-in-suit (which is what it ultimately seeks to disprove in its case), "there must be allegations by the patentee or other record evidence that establish at least a reasonable potential that infringement claims against him could be brought." *Id.* (quoting *Microsoft Corp. v. Data Tern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014)). "This requires separate consideration of the separate types of infringement (notably, direct infringement, inducement of infringement, and contributory infringement) of the claims of the patents-in-suit, and of the bearing on any infringement of such claims of the fact stressed by the district court" *Id.*

The DJA also provides that courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (emphasis added). Based on this permissive language in the statute, the Supreme Court has held that its "textual commitment to discretion" vests federal courts with "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (citations omitted).

In *Mitek*, the Federal Circuit separately addressed the standard for discretionary dismissals of declaratory judgment actions. The *Mitek* Court counseled that:

> [A]s long as a district court "acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, [it] has broad discretion to refuse to entertain a declaratory judgment action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996). But, consistent with the constraints imposed by the noted statutory purposes and judicial-administration principles, we have insisted: "There must be well-founded reasons for declining to entertain a declaratory judgment action." *Capo, Inc. v. Dioptics Medical Products*, 387 F.3d 1352, 1355 (Fed. Cir. 2004); *see also Micron*, 518 F.3d at 903-05; *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993). As an example, we explained in *Ford Motor Co. v. United States* that, "[w]hile the existence of another adequate remedy does not necessarily bar a declaratory judgment, district courts may refuse declaratory relief where an alternative remedy is better or more effective." 811 F.3d 1371, 1379-80 (Fed. Cir. 2016) (citations omitted); *see also* 10B Wright & Miller § 2758 & n.6 (4th ed. Apr. 2022 Update).

*Mitek*, 34 F. 4th at 1347. In short, the Court construes *Mitek* to require district courts to provide good reason for dismissing a declaratory judgment action.

The instant motion brings a facial challenge to the subject matter jurisdiction based on the Complaint. (MTD at 2.) Both Bambuser and Sito argue that Federal Circuit precedent, *Microsoft Corp. v. DataTern, Inc.*, supports their position. 755 F.3d 899 (Fed. Cir. 2014). The Court follows the Federal Circuit's analysis in *Microsoft* in assessing Sito's jurisdictional challenge.

In *Microsoft*, the Federal Circuit reviewed whether the district court had subject matter jurisdiction *de novo*, holding that the district court did have jurisdiction over challenges to some patents but not others. *Microsoft*, 755 F.3d at 903. The threshold question for declaratory judgment jurisdiction is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). The *Microsoft* Court agreed with the district court that the factual allegations in the claim charts that were included in the underlying customer suits strongly supported finding jurisdiction. *Microsoft*, 755 F.3d at 903. The Court specifically cited *Arris*: "where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if . . . there is a controversy between the patentee and the supplier as to the *supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers.*" *Arris Group Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011) (emphasis added). The *Microsoft* Court determined that declaratory judgment jurisdiction existed for some patents specifically because the underlying infringement claims "carried an implied assertion that [the declaratory judgment plaintiff] was committing contributory

6

infringement, and [the patentee] repeatedly communicated this implicit accusation directly to [the declaratory judgment plaintiff] during the course of a protracted negotiation process." *Microsoft*, 755 F.3d at 903 (quoting *Arris*, 639 F.3d at 1381).

Critically, the *Microsoft* Court specified that plaintiffs do not have a right to bring a declaratory judgment action solely because their customers have been sued for direct infringement. *Microsoft*, 755 F.3d at 904. Here, in the underlying SFA Action, Sito alleges that SFA directly infringed its patents and makes no claims accusing Bambuser of direct infringement. (*See* SFA Action, ECF 1.) Sito makes no mention of Bambuser in its Complaint at all. (*Id.*)

Importantly, Bambuser acknowledges that it agreed to indemnify SFA in the SFA action. (Compl. ¶ 9; Opp. at 2, 4.) However, even an obligation to indemnify "would not justify" what Bambuser seeks here: a case has already been filed against Bambuser's customer in the Western District of Texas. *See Microsoft,* 755 F.3d at 904. In agreeing to indemnify their customer, Bambuser could defend SFA and effectively participate in the SFA Action.

The *Microsoft* Court centered its analysis on the relevant factual allegations in the underlying customer suits in distinguishing which patents afforded declaratory judgment jurisdiction and which did not. *See id.* at 905-06. This Court endeavors to do the same. In *Microsoft*, the patent claims that <u>did</u> establish declaratory judgment jurisdiction alleged Microsoft's involvement: "these claim charts can be read to allege that Microsoft is encouraging the exact use which DataTern asserts amount to direct infringement. This record evidence supports Microsoft's claim that there is a substantial controversy regarding inducement." *Id*. at 905. Here, there are no claims or factual allegations that could be read to allege that Bambuser encouraged the use of Sito patents that would amount to direct infringement. The record does not provide this Court with sufficient evidence establishing substantial controversy regarding inducement. There

are also no allegations that would establish controversy between Sito and Bambuser with respect to contributory infringement either. Similarly, the patent claims in *Microsoft* that did not establish declaratory judgment jurisdiction did not impliedly assert that Microsoft induced the alleged infringement: "Nothing in the record suggests that Microsoft encouraged the acts accused of direct infringement, and simply selling a product capable of being used in an infringing manner is not sufficient to create a substantial controversy regarding inducement." *Id*. Further, the Court determined that the same patent claim charts did not impliedly assert contributory infringement against Microsoft:

> [T]hey do not imply or suggest that Microsoft's ADO.NET is not "a staple article or commodity of commerce suitable for substantial non-infringing use." 35 U.S.C. § 271(c) (2012). Indeed, our review of the record does not uncover any evidence that Microsoft's ADO.NET is not suitable for substantial non-infringing uses, or that Microsoft knew that it was "especially made or adapted for use in an infringement" of DataTern's patents. *Id*.

*Id*. at 906.

Bambuser argues that Sito "impliedly and directly accus[ed] Bambuser's product of infringement" and that Sito based its claims of infringement against Bambuser's customers on the use of Bambuser's product.[3] (Opp. at 8-9.) However, as discussed above, Bambuser's Complaint and other submissions do not sufficiently show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.[4] *See MedImmune*, 549

---

[3] Bambuser also invokes negotiations with Sito for a global license for Bambuser's customers. To the extent this off-handed remark is relevant, the Court notes that these negotiations do not appear to rise to the level of a "protracted negotiation process" that might have supported jurisdiction. *See Microsoft,* 755 F.3d at 906; *see also Arris*, 639 F.3d at 1381.

[4] Of note, Bambuser invokes Sito's threatened litigation against another Bambuser customer, Uniqlo, in the Southern District of New York. (Opp. at 9, Compl. ¶¶ 8-10.) To the extent that Plaintiff attempts to pursue an economic theory out of concern for its current or potential customers' freedom to operate, this is an economic theory rejected by the Federal Circuit. *Arris*, 639 F.3d at 1374 ("[W]e have not held that economic injury alone is sufficient to confer standing in patent cases seeking a declaratory judgment.") As such, the Complaint does not state a case or controversy on this issue either.

U.S. at 127. As such, Sito's Motion to Dismiss for lack of subject matter jurisdiction is **GRANTED** and Bambuser's Complaint is **DISMISSED WITHOUT PREJUDICE**.

## IV.     CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF 18) is **GRANTED**. Plaintiff's Complaint is (ECF 1) **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file an amended complaint within sixty (60) days. The Court considered Plaintiff's sur-reply; accordingly, ECF 25 is **GRANTED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:     Jessica S. Allen, U.S.M.J.
        Parties